## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Michael Patterson, being duly sworn, depose and state as follows:

### I.     AGENT BACKGROUND

1.     I am a law enforcement officer and have been employed by the Wilmington Police Department in a full-time capacity since 2008. Prior to that, I worked for the Wilmington Police Department in a part-time capacity from 2002 to 2008. I was assigned to the Wilmington Police Department Detective Bureau in July 2013. I am currently assigned to the Drug Enforcement Administration ("DEA") – Task Force 4, Cross Borders Initiative ("CBI") as a Task Force Officer ("TFO") and have been since 2013. I also hold a Bachelor of Science Degree in Criminal Justice from the University of Massachusetts, Lowell.

2.     During the course of my employment in law enforcement, specifically while assigned as a TFO with DEA, I have received specialized training regarding the activities of narcotics traffickers, including methods used to package, store, and distribute narcotics, and the methods used by narcotics traffickers to conceal and launder the proceeds of their narcotics-trafficking activities.  Over the course of my career in law enforcement, I have debriefed numerous defendants, informants, and witnesses with personal knowledge about narcotics trafficking and the operation of narcotics-trafficking organizations. I have personally participated in all aspects of narcotics-trafficking investigations, including conducting surveillance, using confidential informants, conducting court-authorized interceptions of wire communications, and preparing and executing arrest and search warrants.

3.     I have written and/or participated in the execution of numerous complaints and search warrants resulting in the seizure of large quantities of controlled substances and paraphernalia involved in the manufacture and distribution of controlled substances, United States

currency, records of narcotics and monetary transactions, drug customer lists and other documents

relating to the manufacturing, transportation, ordering, purchasing and distribution of controlled

substances, as well as the collection, expenditure, accounting, transportation, and laundering of

drug proceeds. I have received extensive specialized training in the field of controlled substance

identification, investigation and enforcement.

## II.    PURPOSE OF AFFIDAVIT

4.    I submit this affidavit in support of a Criminal Complaint charging Cecilio

GUZMAN, a/k/a "Gordo," with violating Title 21, United States Code, Sections 841(a)(1) and

(b)(1)(B)(vi) (distribution of and possession with the intent to distribute 40 grams or more of

fentanyl) (the "Charged Offense").

5.    I am familiar with the facts and circumstances of this investigation from my own

personal participation and from oral reports made to me by agents of DEA and other federal, state,

and local law enforcement agencies.

6.    This Affidavit is submitted for the limited purpose of establishing probable cause

to believe that GUZMAN has committed the Charged Offense.  Accordingly, I have not included

each and every fact known to me and other investigators involved in this investigation.  I have set

forth only the facts that I believe are needed to establish probable cause.

## III.    PROBABLE CAUSE

7.    In November 2019, a confidential source, who is willing to testify[1] (hereinafter, the

"CS"), advised DEA CBI agents that s/he purchased large amounts of fentanyl from a Hispanic

---

[1] The CS has been working as a confidential source for DEA since 2018 and has provided information leading to arrests and the seizure of narcotics. The CS has received monetary compensation for his assistance with investigations and is working towards a potential third-party cooperation agreement with state authorities.  The CS has multiple civil restraining orders filed against him/her, the most recent from 2015. Additionally, the CS has one prior state conviction for a controlled substance offense in 2005 and prior convictions for larceny, assault and battery, identity fraud, forgery, motor vehicle offenses, possession of a firearm without a permit, and receipt of

male in Lawrence, Massachusetts, known as "Gordo." The CS informed investigators that "Gordo's" phone number is 978-983-1367 and that "Gordo" lives at 34 Morton Street, 2nd Floor, Lawrence, Massachusetts, with his wife and children. The CS informed investigators that "Gordo" conducts drug transactions a short distance from his residence at Primo Liquors or Union Supermarket #2.[2]

8.      On November 20, 2019, at approximately 1:03 p.m., the CS called GUZMAN at telephone number 978-983-1367 at the direction of investigators. GUZMAN did not answer, but immediately called the CS back. On that phone call, in lightly coded language, the CS requested to purchase 10 "fingers" of fentanyl from GUZMAN, but s/he wanted two "fingers" free of charge. This call was recorded. The phone call was in a mixture English and Spanish. Investigators had a Spanish-speaking officer translate the portions phone calls from Spanish to English. Based on experience and training, investigators know that a "finger" is a unit of narcotics that weighs ten grams. GUZMAN told the CS that for every five "fingers" the CS purchased, he would provide one "finger" for free, meaning the CS would pay for ten "fingers" and receive a total of 12 "fingers," or 120 grams. At approximately 1:12 p.m., GUZMAN contacted the CS and, in lightly coded language, told him/her he would sell the CS twelve "fingers" of fentanyl for $2,000. GUZMAN instructed the CS to contact him when s/he was close to Lawrence. This call was recorded.[3]

---

[2] stolen property. Information received from the CS has been corroborated to the extent reasonably possible and is believed to be reliable. The CS is willing to testify.

[2] "Gordo" was identified as Cecilio GUZMAN by investigators who had previously arrested him. Additionally, the CS identified "Gordo" in a photo array. The identified photo was an RMV photo of GUZMAN. His identity was confirmed after his arrest on November 20, 2019 by investigators who had previously arrested him. For the remainder of this affidavit, I refer to "Gordo" as GUZMAN.

[3] The CS and GUZMAN spoke in a mixture of English and Spanish in these phone calls. Investigators had a Spanish-speaking officer translate the Spanish portions of the phone calls from Spanish to English.

9.      At approximately 2:30 p.m., investigators initiated surveillance in the area of 34 Morton Street, GUZMAN's residence.  Prior to the meeting between GUZMAN and the CS, investigators met with the CS and searched the CS and the CS's vehicle for contraband with negative results.  Investigators equipped the CS with a recording device.  Investigators planned to have a law enforcement officer acting in an undercover capacity (hereinafter, the "UC") drive with the CS to the meeting location.  Investigators provided the UC with currency to pay GUZMAN. Investigators recorded the serial numbers of the money prior to providing it to the UC.  A short time later, investigators surveilled the CS and UC drive to the meeting location on Morton Street.

10.      At approximately 2:40 p.m., investigators observed GUZMAN, wearing a red hooded sweatshirt, walk away from the front of his residence and continue down Morton Street onto Haverhill Street, and then walk to the Union Supermarket #2.  At approximately 2:45 p.m., GUZMAN contacted the CS via telephone and told him/her that he was waiting on the CS at Union Supermarket # 2.  In lightly coded language, GUZMAN told the CS that there were police in the area.

11.      At approximately 3:05 p.m., the UC and CS arrived at Haffner's Carwash and parked their vehicle.  The UC handed the money to the CS to pay for the drugs.  The UC and CS then walked across the street to Union Supermarket #2.  The UC observed GUZMAN through the supermarket window sitting at the rear of the market where food is prepared.  The UC remained outside the supermarket and the CS entered Union Supermarket #2 to meet with GUZMAN.  The UC observed the CS's and GUZMAN's interactions through the window and observed GUZMAN remove a bag from his underwear and hand it to the CS.  Moments later, the CS provided the pre-arranged signal that s/he had exchanged the money for the drugs as s/he walked out of the market.

The CS met with the UC and confirmed that s/he obtained the drugs and handed the bag containing the drugs over to the UC.

12.    Investigators then entered the supermarket and arrested GUZMAN.  Prior to taking him into custody, investigators observed GUZMAN throw the money on the floor a short distance away from him. Investigators recovered the money and identified it as the money originally provided to the UC by matching it with the recorded serialized money list.  After his arrest, GUZMAN was transported to the Lawrence Police Department and positively identified by officers who had arrested him prior to November 20, 2019.

13.    After his arrest, investigators seized two cell phones from GUZMAN.  Investigators called the number the CS used to contact GUZMAN to set up the drug purchase, 978-983-1367, and observed one of GUZMAN's seized cell phones ring.

14.    Based on my training and experience, and the nature of the transaction, and my observations of bag and substance that GUZMAN sold to the CS, including the color, texture, packaging, and pricing, I believe the substance to be fentanyl.  Investigators field tested the substance and the results were inconclusive.  Based on my experience and training, I know that it is common for field test results of a substance believed to contain fentanyl to return an inconclusive result and for the full laboratory tests to show that the substance does in fact contain fentanyl. Investigators weighed the plastic bag and suspected fentanyl on a digital scale.  The combined bag and suspected fentanyl weighed approximately 120 grams.

## IV.   CONCLUSION

15.    Based upon the foregoing, there is probable cause to believe that on November 20

2019, GUZMAN committed the Charged Offense.


I declare that the foregoing is true and correct.

_____
Michael Patterson
Task Force Officer
U.S. Drug Enforcement Administration


Subscribed and sworn to before me, November ___22___, 2019.

_____
Honorable Donald L. Cabell
United States Magistrate Judge
District of Massachusetts

6